HENRY WATSON, Adm'r, etc., *v.* MARTHA A. WATSON
*et al.*

VENDOR'S LIEN. *Suggestion of insolvency defeats. When.* Where a
party holds an equity, which he may ripen into a fixed lien by
filing a bill to enforce satisfaction of his note out of the land,
but fails to do so until suggestion of the debtor's insolvency,
he becomes a simple creditor of the estate, without any fixed
or specific lien, as will give him priority over other general
creditors.

Cases cited: 1 Cold., 554; 1 Sneed, 351; 3 Head, 361; 5 Cold.,
379.

FROM GILES.

Appeal from the Chancery Court. H. H. HAR-
RISON, Chancellor.

JNO. S. WILKES for Henry Watson, Adm'r.

JNO. A. TINNON for Martha Watson and creditors.

NICHOLSON, Ch. J., delivered the opinion of the
Court.

In 1858 Westmoreland sold to Brownlow a tract
of land of 155 acres in Giles County, for $3,100, and
took his note therefor, executing to Brownlow a bond
for title. Afterwards, in 1858, Brownlow sold the
land to James Watson, taking his note for $1,100 in
part consideration therefor, and transferring West-
moreland's bond for title to Watson. On the 13th

of December, 1858, Brownlow endorsed the note, waiving demand and notice, to King.

On the 7th of January, 1861, Brownlow, having paid the full consideration of the land to Westmoreland, agreed, to avoid the expense of two deeds, that Westmoreland might make a deed directly to Watson, which was accordingly done. The deed acknowledges the payment of $3,100, but by whom paid it does not state, reciting that it is the same tract sold by Westmoreland to Brownlow, his title bond being transferred to Watson. The conveyance was absolute, no reservation of any lien in favor of King or Brownlow, and was registered on the same day.

In February, 1862, Watson died, seized and possessed of the tract of land, and in 1865, soon after the Courts were opened, upon the close of the war, the administrator of Watson suggested the insolvency of the estate in the County Court, and in 1867 filed his bill to settle the estate in the Chancery Court, under the insolvent laws, making Brownlow a party as a creditor.

Brownlow having paid $398, the balance on the $1,100 note to King, claimed that he was entitled to be substituted to King's vendor's lien for the amount of $398, paid by him as endorser. The Chancellor held, upon the facts stated, that Brownlow was entitled to no lien, and from that decree Brownlow has appealed.

Brownlow obtained an equitable title to the land by virtue of his bond for title from Westmoreland.

Upon his sale to Watson and transfer of his title bond, he divested himself of his equitable title and vested it in Watson.  Of course Watson took the equitable interest, subject to Westmoreland's lien, for the purchase money due from Brownlow.  He also took it subject to Brownlow's lien for the $1,100 note.  This lien was transferred by Brownlow to King by the assignment of the $1,100.  That transfer was made to King before Brownlow paid the purchase money to Westmoreland.  At the time Brownlow paid the purchase money, and agreed for Westmoreland to make a deed directly to Watson, the lien of King for the $1,100 note was subsisting, and could not be defeated by the arrangement by which Westmoreland conveyed the legal title to Watson.  By this conveyance Watson was vested with the legal and the equitable title, but subject to King's implied lien for the $1,100 note.  1 Cold., 554.  This was the state of things until the suggestion of the insolvency of Watson's estate in 1865. The legal effect of that suggestion was to appropriate the tract of land for a *pro rata* distribution among Watson's creditors, after first satisfying such as had fixed on specific liens.  1 Sneed, 351; 3 Head, 361; 5 Cold., 379.

Down to the suggestion of the insolvency King had an equity which he had the right to ripen into a fixed lien by filing his bill to enforce satisfaction of his $1,100 note out of the land.  Having failed to avail himself of this right until the insolvency

was suggested, he thenceforward was a simple creditor of the estate, without such fixed or specific lien as gave him a priority over other general creditors. When Brownlow paid off the balance of the execution of King against Watson's administrator, and himself as endorser, there was no subsisting specific lien for the debt, to which he could be substituted. He, therefore, became simply a creditor of the estate of Watson, and can only claim a *pro rata* share of the assets.

The Chancellor's decree is affirmed.